# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CHRISTUS ST. VINCENT REGIONAL
MEDICAL CENTER,

        Plaintiff,

vs.                                                                                        No. CIV 17-0452 JB\KK

DISTRICT 1199NM, NATIONAL UNION
OF HOSPITAL AND HEALTHCARE
EMPLOYEES, AFSCME, AFL-CIO,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Plaintiff Christus St. Vincent Regional Medical Center's Petition to Vacate Arbitration Award, filed April 13, 2017 (Doc. 1) ("Petition"); and (ii) the Defendant's Motion to Enforce Arbitration Award, filed April 27, 2017 (Doc. 9)("Motion"). The Court held a hearing on January 19, 2018. The primary issues are: (i) whether the arbitration provisions in the Nurse Agreement between Christus St. Vincent Regional Medical Center & District 1199 NM National Union of Hospital and Healthcare Employees AFSCME, AFL-CIO, October 15, 2014 to August 31, 2017 (Doc. 1-3) ("CBA") -- which state that an arbitration award may be set aside under certain conditions -- change the standard of review for arbitration awards, which the Supreme Court of the United States articulated in the Steelworkers Trilogy[1]; (ii) whether the arbitrator, Michael S.

---

[1]The Steelworkers Trilogy refers to three Supreme Court cases from 1960 that defined how courts review labor-related arbitration awards. See United Steelworkers of America v. American Manufacturing Company, 363 U.S. 564 (1960); United Steelworkers of America v. Warrior and Gulf Navigation Company, 363 U.S. 574 (1960); United Steelworkers of America v. Enterprise Wheel and Car Corporation, 363 U.S. 593 (1960).

Hill,[2] exceeded his authority by ordering a fired employee reinstated; (iii) whether the arbitration award violates public policy by not disciplining an employee who allegedly violated the Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191, 110 Stat. 1936 ("HIPAA"); and (iv) whether Plaintiff Christus St. Vincent Regional Medical Center's ("St. Vincent") claims were frivolous and brought in bad faith such that the Court should award attorneys' fees and costs. The Court concludes: (i) the CBA does not change the Court's standard of review, because the CBA's arbitration provisions restate traditional standard of review principles; (ii) the arbitrator did not exceed his authority, because the award draws from the CBA's essence; (iii) the award does not violate public policy, because there is no evidence that the employee violated HIPAA; and (iv) the Court will not award fees or costs, because St. Vincent did not pursue frivolous arguments or act in bad faith. Accordingly, the Court denies the Petition, and grants the Motion in part and denies it in part.

## FACTUAL BACKGROUND

St. Vincent is a hospital in Santa Fe, New Mexico. See Petition ¶ 1, at 1. Defendant District 1199NM, National Union of Hospital and Healthcare Employees, AFSCME, AFL-CIO ("Hospital Union") is a labor union based in Santa Fe. See Petition ¶ 2, at 1. St. Vincent and the Hospital Union entered into the CBA. See CBA at 1. The CBA states that St. Vincent has the "exclusive discretion" to execute certain actions, including "[d]ecisions concerning the hiring,

---

[2]The record does not disclose anything about Hill other that he appears to be on Federal Mediation & Conciliation Service's ("FMCS") roster of arbitrators. See Arbitration Transcripts at 1 (dated October 18, 2016), filed April 13, 2017 (Doc. 1-8). To be admitted to the FMCS' roster of arbitrators, "an applicant must be experienced, competent, and acceptable in decision-making roles in the resolution of labor disputes," and must submit five labor-related arbitration awards or complete FMCS' forty-hour training course. Frequently Asked Questions, Federal Mediation & Conciliation Service, https://www.fmcs.gov/resources/faqs (last visited March 7, 2018).

termination, assignment, transfer, demotion and promotion of associates," CBA § 7.1.12, at 7-8, and "[d]ecisions concerning the counseling, reprimanding, discipline and discharge of associates for just cause with the specific understanding that any discipline must be for just cause and that the Union may grieve and arbitrate any such decisions," CBA § 7.1.16., at 8. The CBA establishes a progressive disciplinary process:

> The four (4) basic steps listed below will be followed for disciplinary action. These steps will generally be taken in the order listed, although some steps may be omitted when serious offences have been committed.
>
> > (1)    Documented Verbal Counseling
> >
> > (2)    Written Warning
> >
> > (3)    Final Warning or Suspension
> >
> > (4)    Termination

CBA § 12.12.10., at 15.

The CBA has several provisions relating to arbitration:

> 30.19.5.   The Arbitrator shall have the authority to determine if there was just cause for any disciplinary action.   However, in no case shall the Arbitrator have the power to add to, nor subtract from, or modify this Agreement nor shall the Arbitrator substitute their [sic] discretion for that of the employer where such discretion has been retained by the employer, nor shall the Arbitrator exercise any responsibility or function of the employer, including but not limited to, the ability to set standards of patient care.
>
> 30.19.6.   The Arbitrator's award in disciplinary cases is limited to back pay and/or reinstatement, or reinstatement to a similar position at the parties' discretion if irreconcilable conflicts exist. . . .   The arbitrator may not award attorney's fees, punitive damages, general compensatory damages, or costs.
>
> > 30.19.7.     The arbitrator's award may be set aside when the arbitrator:
> >
> > 30.19.7.1.  Exceeded his/her authority in making the award.
> >
> > 30.19.7.2.  Exceeded his/her jurisdiction under the terms of this Agreement or,

30.19.7.3.  The award is contrary to law.

CBA §§ 30.19.5 -.7, at 20.

Sharon Argenbright is a Registered Nurse who worked at St. Vincent for over twenty years.  <u>See</u> Response to Petitioner's Motion to Vacate Arbitration Award at 1, filed April 27, 2017 (Doc. 8)("Petition Response").  Argenbright was an active union member.  <u>See</u> Petition ¶ 7, at 7 (stating that Argenbright was a "Union Delegate").  On May 16, 2015, Argenbright took a break from her work shift to enter the Post Anesthesia Care Unit ("PACU") area of Surgical Services and look through PACU's log books.  Corrective Action Form at 1 (dated May 28, 2015) at 1, filed April 13, 2017 (Doc. 1-6)("Final Warning").  Argenbright was searching for patient information relating to a grievance the Hospital Union filed on behalf of a recently terminated nurse.  <u>See</u> Final Warning at 1; Petition ¶ 17, at 6.  St. Vincent investigated the incident and determined that Argenbright's unauthorized entry into a secured area during her work shift to access confidential patient records on the Hospital Union's behalf is "so egregious that it warrants skipping steps in the progressive disciplinary process and issuing this corrective action as a Final Warning."  Final Warning at 2.  The Final Warning directs Argenbright to refrain from certain actions, such as "using her ID security badge to enter unauthorized or secure areas unless she is assigned to work in that area," "conducing non-work related business during working hours," and "looking at protected health information unless she has a need to know." Final Warning at 2-3.  The Final Warning concludes by stating:  "**Consequences of further infractions:** Failure to immediately and continually adhere to the corrective measure described above may result in further corrective action up to and including termination for similar or any other hospital policy violation."  Final Warning at 3.

In early 2016, according to St. Vincent, Argenbright "was involved in a series of

incidents that taken separately each warrant discipline, and taken together, warrant termination." Corrective Action Form (dated February 18, 2016) at 1, filed April 13, 2017 (Doc. 1-7) ("Termination Form").  First, according to St. Vincent, during a shift on January 11, 2016, Argenbright "direct[ed] patient care providers to the Clinical Supervisor at a rate that seemed unnecessary."  Termination Form at 1.  Second, according to St. Vincent, during an investigative meeting relating to Argenbright's January 11, 2016, shift, Argenbright "revealed that she was in possession of documents containing private healthcare information."  Termination Form at 1. When "management attempted to investigate the nature of the documents, Ms. Argenbright refused to cooperate."  Termination Form at 1.  Third, according to St. Vincent, on January 18, 2016, Argenbright "failed to gain the confidence of [a] patient, . . . fail[ed] to communicate properly about a perceived lack of responsiveness to the patient's pain, was unaware of care requirements for oxygen, and failed to reassign the patient formally to another nurse." Termination Form at 3.  Fourth, on February 2, 2016, Argenbright entered the Surgical Services' break room to eat lunch, and leave a Union card and labor contract for an employee named Kathleen Cass.  See Termination Form at 3; Petition ¶ 27, at 9.  According to St. Vincent, she had tried to enter the Surgical Services area by swiping her badge, but when that approach did not work, another employee let her in a different door.  See Termination Form at 3.  According to St. Vincent, after lunch, Argenbright returned to her usual workplace in the hospital and realized that she may have left her "report sheet" in the Surgical Services area; she returned to Surgical Services and was once again let into the area by another employee.  See Termination Form at 3.  According to St. Vincent, during this visit, Argenbright entered a patient care area to speak with Cass.  See Termination Form at 3-4.  Based on these four incidents, it fired Argenbright.  See Termination Form at 1.

# PROCEDURAL BACKGROUND

Argenbright requested arbitration.  <u>See</u> Arbitrator's Decision and Award at 1 (dated January 13, 2016), filed April 13, 2017 (Doc. 1-2)("Award").  According to Hill, the question is "whether the Grievant was discharged for just cause and if not, what is the remedy?"  Award at 3.  <u>See</u> Reply in Support of Defendant's Motion to Enforce Arbitration Award, filed June 14, 2017 (Doc. 20)("Reply")(stating that the question for the Arbitrator was whether grievant was disciplined for just cause, and, if not, what is the appropriate remedy).

Hill held a hearing on October 18-19, 2017, and November 16, 2017.  <u>See</u> Award at 1. Hill issued the Award on January 13, 2016.  <u>See</u> Award at 1.  In the Award, Hill provides a basic factual background, <u>see</u> Award at 3, summarizes relevant documents and the parties' positions, <u>see</u> Award at 3-4, and provides a lengthy summary of the evidence and testimony, <u>see</u> Award at 4-32.  Hill's "Discussion and Decision" section runs four pages in which he briefly addresses each of the four reasons given for Argenbright's discharge.  <u>See</u> Award at 33-37.  First, Hill concludes that Argenbright's frequent requests for a supervisor's assistance were not an appropriate basis for termination.  <u>See</u> Award at 33-34.  Second, Hill states that Argenbright's "handling of the difficult patient on January 18, 2016 is not found by the Arbitrator as cause for termination."  Award at 35.  Third, Hill states:

> While testimony indicated reason for suspicion that Ms. Argenbright might have hospital documents in her possession, a collective bargaining agreement provision states that notes are not subject to disclosure.  Therefore, no violation of the collective bargaining agreement was found in the refusal to disclose notes in the possession of Ms. Argenbright.  Consequently, no evidence was provided at the hearing of a HIPAA violation by Ms. Argenbright.

Award at 36.  Fourth, Hill states:

> The evidence is clear and convincing that she attempted to enter the area by using her badge which did not permit her to enter.  When that failed, she entered the area either by being let in a locked door by someone or following someone who

gained entry by appropriate means. . . .  The Grievant had previously been instructed in 2015 not to enter the Surgical Services area unless she was assigned duties in that area or she had permission of a supervisor to be in the area.  The prior instructions were part of a Corrective Action which included a suspension and a final warning.

Award at 36-37.  Hill concludes that "the bulk of the charges against [Argenbright] were unsubstantiated."  Award at 37.  Hill orders Argenbright reinstated to her job after a six-month suspension and be awarded back pay.  See Award at 37.

### 1.    The Petition.

Three months after Hill issued the Award, St. Vincent asked the Court to vacate it.  See Petition ¶ 8, at 3.  St. Vincent argues that the Award does not draw its essence from the CBA, because Hill's reduced discipline order deviated from the CBA's progressive disciplinary process.  See Petition at 14-17.  St. Vincent asserts that Hill ignored the CBA's plain language by reducing Argenbright's punishment despite determining that there is clear and convincing evidence that she violated a Final Warning.  See Petition at 17-20.  St. Vincent also argues that Hill exceeds his jurisdiction and violates public policy by reversing Argenbright's termination despite finding reason for suspicion that Argenbright violated the Health Insurance Portability and Accountability Act, 29 U.S.C. § 1181 ("HIPAA").  Petition ¶¶ 10, 13-14, at 4; 13-14.  See id. at 20-26.

### 2.    The Petition Response.

In its Petition Response, the Hospital Union contends that St. Vincent "attempt[s] to re-litigate facts already determined and which are beyond the scope of this Court's review."  Petition Response at 5.  According to the Hospital Union, the courts' standard of review of arbitration awards is so narrow that "courts may not consider the merits of an arbitration award even if it is alleged that it rests on errors of fact or misinterpretation of the contract."  Petition Response at 5 (citing Eastern Associated Coal Corp. v. Mine Workers, 531 U.S. 57, 62 (2000);

United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987); Titan Tire Corp. of Bryan v. United Steelworkers of Am. Local 890L, 656 F.3d 368 (6th Cir. 2011); Int.l Bhd. Of Elec. Workers, Local Union Nos. 12, 111, 113, 969 v. Prof'l Hole Drilling, Inc., 574 F.2d 497, 503 (10th Cir. 1978); Vrable IV, Inc. v. SEIU District 1199, 784 F.Supp.2d 846 (S.D. Ohio 2011)). The Hospital Union contends that Hill appropriately applied the "seven tests of just cause" standard. Petition Response at 10-11 (citing Healthcare Services Group, 131 Lab. Arb. 975, 980 (Clark, 2013); Grief Brothers Cooperage Corp., 42 Lab. Arb. 555 (Daugherty, 1964)). Specifically, the Hospital Union notes that Hill applied the seventh test -- whether the discipline was reasonably related to the seriousness of the offense and the employee's history. See Petition Response at 11.

The Hospital Union also contends that St. Vincent mischaracterizes Hill's decisions, noting, for instance, that Hill determined that Argenbright took certain actions that St. Vincent decided violated a Final Warning; Hill -- according to the Hospital Union -- did not determine that Argenbright violated the final warning. See Petition Reply at 13.

Next, the Hospital Union argues that the Award does not violate public policy by not terminating Argenbright for a HIPAA violation, because, according to the Hospital Union, Hill did not find evidence that Argenbright violated HIPAA. See Petition Reply at 19.

Finally, the Hospital Union argues that the Court should grant it attorneys' fees, because St. Vincent brought its petition in bad faith or because it was objectively unreasonable. See Petition Reply at 21-24.

### 3.    **The Motion.**

On the same day it filed its Petition Response, the Hospital Union filed its Motion, asking the Court to enforce the Award. See Motion ¶ 1, at 1 (citing 29 U.S.C. § 185(a)). The Hospital Union also requests that its costs "be taxed against Plaintiff and that as part of these costs there

be included a reasonable attorney's fee." Motion at 2-3. The Hospital Union incorporates by reference its Petition Response. See Motion ¶ 6, at 2.

### 4. **The Motion Response.**

St. Vincent responds. See Christus St. Vincent Regional Medical Center's Response to Motion to Enforce Arbitration Award, filed May 22, 2017 (Doc. 14)("Motion Response").[3] St. Vincent begins by asserting: (i) the Hospital Union fails to state a claim upon which relief can be granted; (ii) the Court should vacate the Award pursuant the Labor Management Relations Act, 61 Stat. § 301 (codified at 29 U.S.C. § 185) ("LMRA"), because Hill "exceeded his powers" and the Award "does not draw its essence" from the parties' CBA; (iii) the Court should vacate the Award pursuant to § 301 of the LMRA, 29 U.S.C. § 185.2, and 9 U.S.C. § 12 for public policy reasons; (iv) there is no basis for awarding attorneys' fees; (v) there is no basis for injunctive relief. Motion Response ¶¶ 1-5, at 2-3.

St. Vincent argues that the Court should vacate the Award, because Hill exceeded his powers by reducing Argenbright's discharge. See Motion Response at 4. St. Vincent contends that Hill concluded that Argenbright committed certain acts that, according to St. Vincent, constitutes just cause for dismissal under the CBA. See Motion Response at 4-5. Consequently, St. Vincent argues, Hill exceeded his jurisdiction by ignoring St. Vincent's exclusive authority, pursuant to the CBA, to discipline and discharge employees for just cause. See Motion Response at 5-6. St. Vincent also argues that Hill misunderstood the CBA's provisions on producing records, and, as a consequence, erroneously concluded that there was no evidence that Argenbright violated HIPAA. See Motion Response at 10.

---

[3]On the same day that St. Vincent filed its Motion Response, it also filed its Christus St. Vincent Regional Medical Center's Reply in Support of Petition to Vacate Arbitration Aware, filed May 22, 2017 (Doc. 15), in which St. Vincent repeats its Motion Response arguments verbatim.

Next, St. Vincent contends that the Court should vacate the Award, because it violates public policy.  See Motion Response at 11.  St. Vincent argues that "[a]llowing an employee to collect and misuse patient information, refuse to cooperate in an investigation of the matter, and avoid discipline flies in the face of well-established public policy involving the privacy of protecting health information."  Motion Response at 11.

Finally, St. Vincent argues that there is no basis for the Court to award attorneys' fees, because its Petition is reasonable and made in good faith.  See Motion Response at 11-12.  Moreover, St. Vincent contends, the Hospital Union does not meet pleading requirements required for sanctions under rule 11 of the Federal Rules of Civil Procedure, because a sanctions motion must be made separately and describe specific sanctionable conduct.  See Motion Response at 12.

**5.     The Reply.**

The Hospital Union replies.  See Reply at 1.  The Hospital Union disputes that Hill exceeded his powers or ignored the CBA.  See Reply at 2-3.  The Hospital Union contends that St. Vincent mischaracterizes some of the evidence, such as by suggesting that Argenbright entered the restricted area for non-work-related activities when she entered the area once during a lunch break and once to retrieve a document necessary to perform her job.  See Reply at 3-4.  The Hospital Union also contends that Hill did not overstep the CBA by ignoring the Final Warning, because the CBA provides for additional disciplinary steps.  See Reply at 4-5.  The Hospital Union next contends that Arbitrators "commonly amend the discipline imposed on employees."  Reply at 5 (citing United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 598 (1960); Labor Relations Div. of Const. Indus. of Massachusetts, Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local No. 379, 29 F.3d 742, 747 (1st Cir. 1994); Angelica Textile Servs., Inc. v. Local Union 170, Int'l Bhd. of Teamsters,

2013 WL 2251554, at *4 (D. Mass., May 21, 2013)(Hillman, J.)). The Hospital Union contends that the United States Court of Appeals for the Tenth Circuit permits arbitrators to adjust punishments in light of the severity of the grievant's actions. See Reply at 5 (citing Mistletoe Exp. Serv. v. Motor Expressmen's Union, 566 F.2d 692, 695 (10th Cir. 1977)("Mistletoe"); Local No. 7 United Food & Commercial Workers Int'l Union v. King Soopers, Inc., 222 F.3d 1223, 1229 (10th Cir. 2000)("King Soopers").

Finally, the Hospital Union disputes St. Vincent's contention that the Award's purported lack of specificity would be grounds for vacating the Award. See Reply at 8. The Hospital Union states: "And while the Arbitrator did not provide a detailed legal analysis of the seven tests of just cause, it is apparent from his Award that he took those factors into consideration, and his decision tracks with that rubric." Reply at 8-9.

### 6. __The Hearing__.

The Court held a hearing on January 19, 2018. See Draft Hearing Transcript (taken January 19, 2018) ("Tr.").[4] St. Vincent began by asserting that, in their CBA, the parties agreed on a standard of review that an arbitrator's award may be set aside when the arbitrator exceeds his or her authority. See Tr. at 2:18-3:3 (Birenbaum). St. Vincent contended that the CBA's specified standard of review distinguishes this case from the caselaw. See Tr. at 3:4-11 (Birenbaum). St. Vincent asserted that it skipped some steps in the CBA's four-step disciplinary process described in the CBA, because the CBA also allows steps to be skipped for serious violations, and Argenbright's offense was serious. See Tr. at 7:5-16 (Birenbaum)(citing CBA at 15). See also CBA at 19 ("These steps will generally be taken in the order listed, although some steps may be omitted when serious offences have been committed."). Regarding the Award, St.

---

[4]The Court's citations to the hearing transcript refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Vincent argues that Hill rendered a decision without applying or citing the CBA's disciplinary procedure. See Tr. at 8:20-9:4 (Birenbaum). St. Vincent argued that this case is similar to Mistletoe, because St. Vincent's power to terminate employees is not ambiguous. See Tr. at 9:31-10:14 (Birenbaum). St. Vincent distinguishes this case from King Soopers, because, in that case, the terminated worker was terminated for actions that their CBA did not expressly prohibit; here, by contrast, St. Vincent argues, Argenbright violated clear CBA policy. See Tr. at 11:21-12:20 (Birenbaum). The Court indicated that Hill appeared to grapple with the CBA language, and St. Vincent replied that, in its view, Hill summarized the CBA language but did not apply the language to his analysis. See Tr. at 14:13-15:10 (Court, Birenbaum). St. Vincent emphasized its view that Hill exceeded his authority by deviating from the parties' clear intent when adopting the CBA. See Tr. at 16:18-17:3 (Birenbaum).

The Court asked whether the CBA can require the Court to depart from the Steelworkers Trilogy standards. See Tr. at 17:4-8 (Court). St. Vincent answered that the Steelworkers Trilogy standards do not apply to this case, because in those cases, there was no standard of review "baked into the [parties'] contract." Tr. at 17: 9-22 (Birenbaum). St. Vincent conceded that there are no cases standing for that proposition. See Tr. at 18:3-4 (Birenbaum). St. Vincent contended that it was not asking the Court to deviate from the caselaw, but rather is asking the Court "to follow the express contract language." Tr. at 18:8-20 (Birenbaum).

The Hospital Union asserted that Hill was asked to determine whether there was just cause for Argenbright's termination, and "there was really nothing for the arbitrator to grapple with as far as the . . . language of the contract." Tr. at 19:9-14 (Montalbano). The Hospital Union stated that Hill was not obligated to provide a particular level of analysis supporting his decision. See Tr. at 20:3-13 (Montalbano).

The Court asked why Hill did not ground his decision more clearly in the CBA's language.  See Tr. at 20:21-24 (Court).  The Hospital Union answered that, first of all, Hill's task "was not to analyze the CBA" but to decide whether there was just cause supporting Argenbright's termination.  Tr. at 20:25-21:3 (Montalbano).  The Hospital Union asserted that St. Vincent "does not have unfettered discretion to terminate an employee no matter what" without that judgment being challenged, even with HIPAA violations.   Tr. at 21:20-22:18 (Montalbano).  The Court asked whether the CBA permitted an arbitrator to fashion a new remedy, and the Hospital Union stated that there is caselaw stating that an arbitrator "can reduce a termination and it's quite common that a termination gets reduced."  Tr. at 23:7-23 (Court, Montalbano).   The Hospital Union continued that the third step of the CBA's disciplinary process calls for a final warning or suspension, and that "nothing in the CBA or caselaw says that if you get a final warning then any future [infraction] must result in termination."  Tr. at 24:6-11 (Montalbano).  The Hospital Union asserted: "[E]ven if the arbitrator looks at a collective bargaining agreement and misinterprets it [or] gets it wrong, that is still not grounds for reversing an award and vacating it."  Tr. at 24:20-23 (Montalbano).

The Hospital Union stated that Hill's task was to determine whether the discipline was reasonable, and Hill determined that termination was excessive but suspension was reasonable. See Tr. at 33:5-8 (Montalbano).  The Court asked where Hill derives his power to make his own reasonableness decision, and the Hospital Union replied that

> the CBA gives him the power to determine if just cause exists for a discipline action, and then in the decades-long history going back to the post-war era of arbitration jurisprudence, what it means is that when he has the power to determine just cause, that means he [uses] the seven factors and those factors were considered here.

Tr. at 33:9-34:10 (Court, Montalbano).

The Court asked the Hospital Union whether the parties could agree to a CBA that calls for applying a different standard than the <u>Steelworker</u> Trilogy standard, and the Hospital Union answered that "I think it's a moot point because nothing in the contract contradicts or goes against what the <u>Steelworker</u> Trilogy says." Tr. at 36:24-37:12 (Court, Montalbano). The Hospital Union asserted that, in its view, the CBA's judicial review standard is indistinguishable from <u>Mistletoe</u>'s just-cause provision. <u>See</u> Tr. at 39:1-5 (Court, Montalbano).

St. Vincent asserted that the parties stipulated at arbitration that the Final Warning "was not at issue, so the arbitrator had no authority to change that, so suspension was irrelevant [and] the only thing the arbitrator could consider was the . . . termination." Tr. at 55:18-24 (Birenbaum).

The Court stated its inclination that the Award appears sufficiently grounded in the CBA's language that "if the employer wants to negate the case law that we've developed in this Circuit for just cause, it's going to have to be more clear." Tr. at 54:18-25 (Court).

### 7. St. Vincent Letter.

A few days after the hearing, St. Vincent sent the Court a letter. <u>See</u> St. Vincent Letter Re: Supplemental Authority in Support of Petition to Vacate Arbitration Award [Dkt. No. 1] in *Christus St. Vincent Regional Medical Center v. District 119NM, National Union of Hospital and Healthcare Employees, AFSCME, AFL-CIO*, No. 1:17-CV-0452-LF-KK (dated January 25, 2018), filed January 25, 2018 (Doc. 24)("Letter"). In the Letter, St. Vincent offers additional briefing on two issues discussed at the hearing. <u>See</u> Letter at 2. First, St. Vincent argues that <u>Mistletoe</u> does not require the Court to permit Hill to determine that certain conduct is just cause for discipline and not for discharge, because <u>Mistletoe</u> holds that an arbitrator cannot apply a different punishment from what the employer imposes if doing do violates the parties' contract. <u>See</u> Letter at 2. According to St. Vincent, Hill violated the CBA when he found just cause for

discipline and not for termination, because the CBA's disciplinary process requires that a Final Warning violation result in termination.  <u>See</u> Letter at 4-5 (citing <u>Amanda Bent Bolt Co. v. Int'l Union, United Auto., Aerospace, Agric. Implement Workers</u>, 451 F.2d 1277, 1279 (6th Cir. 1971)("<u>Amanda Bent</u>").

Second, St. Vincent argues that, while it "appreciate[s] the temptation to defer to arbitration in view of the *Steelworkers Trilogy* and progeny, . . . it is error to ignore the corollary to the deferral rule" that courts should defer to "the parties' agreement over deferral."  Letter at 6.  In St. Vincent's view, under the <u>Steelworkers</u> Trilogy's deferential standard, the Court should not permit Hill to ignore the CBA's progressive disciplinary process and "fashion a new disciplinary rule" -- <u>i.e.</u>, creating "a second final warning."  Letter at 7.

St. Vincent also contends that, when an arbitrator "implicitly finds just cause for discipline, the arbitrator cannot strip the employer of its right to terminate the employee."  Letter at 7 n.1 (citing <u>Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n, AFL-CIO</u>, 889 F.2d 599, 604 (5th Cir. 1989)).  St. Vincent adds that the parties "specifically stipulated that the Final Warning was not an issue before the arbitrator."  Letter at 3 (citing Arbitration Transcript excerpts at 3, 4, 5-6 (taken October 18, 2016), filed January 25, 2018 (Doc. 24-1)).

## LAW REGARDING VACATING ARBITRATION AWARDS

9 U.S.C. §10 provides, in relevant part:

 (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration --

> (1) where the award was procured by corruption, fraud, or undue means;

> (2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

. . . .

(b) If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

9 U.S.C. §10.

"[A]rbitration is the substitute for industrial strife." United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 578 (1960). "[A]rbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself." Warrior & Gulf Nav. Co., 363 U.S. at 578. As the Supreme Court of the United States explained in United Steelworkers of Am. v. Warrior & Gulf Navigation Co.:

The labor arbitrator performs functions which are not normal to the courts; the considerations which help him fashion judgments may indeed by foreign to the competence of courts. A proper conception of the arbitrator's function is basic. He is not a public tribunal imposed upon the parties by superior authority which the parties are obliged to accept. He has no general charter to administer justice for a community which transcends the parties. He is rather part of a system of self-government created by and confined to the parties. . . . The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law -- the practices of the industry and the shop -- is equally a part of the collective bargaining agreement although not expressed in it. The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. The parties expect that his judgment of a particular grievance will reflect not only what the contract says but, insofar as the collective bargaining agreement permits, such factors as the effect upon productivity of a particular result, its consequence to the morale of the shop, his judgment whether tensions will be heightened or diminished. For the parties' objective in using the

arbitration process is primarily to further their common goal of uninterrupted production under the agreement, to make the agreement serve their specialized needs. The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed.

363 U.S. at 581-82. The court should give "special heed . . . to the context in which collective bargaining agreements are negotiated and the purpose which they are intended to serve." United Steelworkers of Am. v. Am. Mfg. Co., 363 U.S. 564, 567 (1960). The Supreme Court explains in United Steelworkers of America v. American Manufacturing Co.:

The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for. The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware.

363 U.S. at 567-68.

The "standard of review of an arbitrator's award is among the narrowest known to the law." LB & B Assoc., Inc. v. Int'l Bhd of Elec. Workers, Local No. 113, 461 F.3d 1195, 1197 (10th Cir. 2006)(internal quotations omitted). "'[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.'" LB & B Assoc., Inc. v. Int'l Bhd of Elec. Workers, Local No. 113, 461 F.3d at 1195 (quoting United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. at 38). "The arbitrator's findings are beyond review, and, so long as the arbitrator does not ignore the plain language of the

collective bargaining agreement, so is his interpretation of the contract." Champion Boxed Beef Co. v. Local No. 7 United Food & Commercial Workers Int'l Union, 24 F.3d 86, 87 (10th Cir. 1994).

As the Tenth Circuit explained in Litvak Packing Co. v. United Food and Commercial Workers, Local No. 7, 886 F.2d 275 (10th Cir. 1989),

> [the standard that] an award [must] . . . draw . . . its essence from the collective bargaining agreement. . . . is not an invitation to a court to substitute its judgment for that of an arbitrator. The parties have contracted for an arbitrator to resolve their disputes, not a court. . . . They have agreed to be bound by the arbitrator's factfinding and contract interpretation whether his findings and conclusions are correct or not. . . . Thus, as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision. . . . If the parties disagree with the arbitrator's interpretation, their remedy is to modify their contract or select a new arbitrator.

886 F.2d at 276 (internal citations and quotations omitted). See Terex Corp. v. Local Lodge 790 Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO, 99 F.3d 1150 (Table), No. 95-5190, 1996 WL 582744 at * 3 (10th Cir. October 10, 1996)(explaining that the standard of review is "[the] Mount Everest of standards[,] reflect[ing] the strong federal policy favoring arbitration agreements."). "When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal." United Steelworkers of Am. v. Am. Mfg. Co., 363 U.S. at 569.

The CBA is "more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate." United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. at 578. Mere ambiguity in the arbitrator's award does not support vacating the award. See United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. at 598 (stating "[a] mere ambiguity in the opinion accompanying an award, which permits the inference

that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award."). "Arbitrators have no obligation to the court to give their reasons for an award. To require opinions free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions." United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. at 598. "An arbitrator's award must be upheld unless it is contrary to the express terms of the language of the contract." Int'l Union of Operating Eng'rs, Local No. 9 v. Shank-Artukovich, 751 F.2d 364, 365 (10th Cir. 1985)(internal quotations omitted).

The scope of review of arbitration awards is narrow; "[h]owever, an arbitrator's discretion, though entitled to 'profound deference,' is not unlimited." LB & B Assoc., Inc. v. Int'l Bhd of Elec. Workers, Local No. 113, 461 F.3d at 1197 (quoting Bruce Harwood Floors v. S. Council of Indus. Workers, 8 F.3d 1104, 1107 (6th Cir. 1993)). An arbitrator "does not sit to dispense his own brand of industrial justice and his award is legitimate only so long as it draws its essence from the collective bargaining agreement." LB & B Assoc., Inc. v. Int'l Bhd of Elec. Workers, Local No. 113, 461 F.3d at 1197 (internal quotations omitted). An award does not draw its essence from the CBA if

> it is contrary to the express language of the contract or is so unfounded in reason and fact, so unconnected with the working and purpose of the agreement as to manifest an infidelity to the obligation of the arbitrator or if viewed in the light of its language, its context, and any other indicia of the parties' intention, it is without factual support.

United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. at 597. Whether a record before an arbitrator should be reopened so that the decision of another arbitrator in a different case can be made a part of the record is a procedural matter. See Warehouse Employees, Local 169 v. Acme Markets, Inc., 473 F.Supp. 709, 714 (E.D. Pa. 1979)(Broderick, J.). "[P]rocedural

questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964)

<h2 style="text-align:center"><u>LAW REGARDING RULE 12(b)(6)</u></h2>

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994)(Brorby, J.).  The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss.");  Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)(Briscoe, J.)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.")(citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006)(McKay, J.)).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550

U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that,

if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v.

Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has

facial plausibility when the pleaded factual content allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at

678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical

possibility that some plaintiff could prove some set of facts in support of the pleaded claims is

insufficient; the complainant must give the court reason to believe that this plaintiff has a

reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, LLC

v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(Kelly, J.)(emphasis omitted).  The United

States Court of Appeals for the Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a
> complaint: if they are so general that they encompass a wide swath of conduct,
> much of it innocent, then the plaintiffs "have not nudged their claims across the
> line from conceivable to plausible." The allegations must be enough that, if
> assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for
> relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(McConnell, J.)(citations

omitted)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

Although affirmative defenses must generally be pled in the defendant's answer, not

argued on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions.  First, a defendant

can argue an affirmative defense on a motion to dismiss where the defendant asserts an immunity

defense -- the courts handle these cases differently than other motions to dismiss.  See Glover v.

Gartman, 899 F. Supp. 2d 1115, 1137-39, 1141 (D.N.M. 2012)(Browning, J.)(citing Pearson v.

Callahan, 555 U.S. 223 (2009)); Robbins v. Oklahoma, 519 F.3d at 1247. Second, the defendant can raise the defense on a motion to dismiss where the facts establishing the affirmative defense are apparent on the face of the complaint. See Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)(Hill, J.)("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim. If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule."). The defense of limitations is the affirmative defense that the complaint's uncontroverted facts is most likely to establish. See 5 Charles Alan Wright et al., Federal Practice & Procedure: Civil § 1277, at 643 (3d ed. 2004). If the complaint sets forth dates that appear, in the first instance, to fall outside of the statutory limitations period, then the defendant may move for dismissal under rule 12(b)(6). See Rohner v. Union P. R. Co., 225 F.2d 272, 273-75 (10th Cir. 1955)(Wallace, J.); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945)(Phillips, J.); Andrew v. Schlumberger Tech. Co., 808 F. Supp. 2d 1288, 1292 (D.N.M. 2011)(Browning, J.).

The plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute. The Tenth Circuit has not clarified whether this assertion must be pled with supporting facts in the complaint or may be merely argued in response to the motion. Cf. Kincheloe v. Farmer, 214 F.2d 604 (7th Cir. 1954)(Major, J.)(holding that, once a plaintiff has pled facts in the complaint indicating that the statute of limitations is a complete or partial bar to an action, the plaintiff must plead facts establishing an exception to the affirmative defense). It appears that, from case law in several Courts of Appeals, the plaintiff may avoid this problem altogether -- at least at the motion-to-dismiss stage -- by refraining from pleading specific or identifiable dates. See Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007)(Niemeyer, J.); Hollander v.

<u>Brown</u>, 457 F.3d 688, 691 n.1 (7th Cir. 2006)(Ripple, J.). Although the Tenth Circuit has not squarely addressed this practice, the Court has permitted this practice. <u>See</u> <u>Anderson Living Trust v. WPX Energy Prod., LLC</u>, 27 F. Supp. 3d 1188 (D.N.M. 2014)(Browning, J.).

### <u>LAW REGARDING ATTORNEY'S FEES</u>

The obligation to pay attorneys' fees can arise by statute or contractual agreement. <u>See</u> <u>United States ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc.</u>, 790 F. Supp. 250, 251-52 (D. Colo. 1992)(Kane, J.)(citing <u>F.D. Rich, Inc. v. United States ex rel. Indus. Lumber Co.</u>, 417 U.S. 116 (1974)). <u>Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc.</u>, 188 F. Supp. 3d 1097, 1159 (D.N.M. 2016)(Browning, J.)(stating that the Uniform Trust Code "provides the Court with broad discretion to award attorney's fees in litigation involving the administration of a trust as justice and equity may require"). Whether the obligation to pay reasonable attorneys' fees arises from statute or contract, the court's analysis of the reasonableness of the fees is similar. <u>See</u> <u>United States ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc.</u>, 790 F. Supp. at 251-52 (citing <u>United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc.</u>, 834 F.2d 1533 (10th Cir. 1987)). The Tenth Circuit has explained that, in evaluating contractual fee awards, the Court may consider "the familiar factors from the federal court cases awarding fees in the statutory context" as <u>Ramos v. Lamm</u>, 713 F.2d 546 (10th Cir. 1983), defines them. <u>United States ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc.</u>, 790 F. Supp. at 251-52 (citing <u>United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc.</u>, 834 F.2d at 1550).

"To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this

lodestar amount reflects a 'reasonable' fee." Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998). The lodestar is "'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,' which produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances." Anchondo v. Anderson, Crenshaw & Assoc., LLC, 616 F.3d 1098, 1102 (10th Cir. 2010)(quoting Hensley v. Eckerhart, 461 U.S. at 433, and Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 543-44 (2010)). "The party requesting attorney fees bears the burden of proving" the two components used to calculate the fee award: (i) "the amount of hours spent on the case"; and (ii) "the appropriate hourly rates." United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1233 (10th Cir. 2000). See New Mexico v. Valley Meat Co., LLC, 2015 WL 9703255, at *22 (D.N.M. Dec. 14, 2015)(Browning, J.)(citing United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d at 1233). Once the Court makes these two determinations, the fee "claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." Robinson v. City of Edmond, 160 F.3d at 1281.

"To determine what constitutes a reasonable rate, the district court considers the prevailing market rate in the relevant community." New Mexico v. Valley Meat Co., LLC, 2015 WL 9703255, at *23 (quoting Lippoldt v. Cole, 468 F.3d 1204, 1224-25 (10th Cir. 2006)). See Malloy v. Monahan, 73 F.3d 1012, 1018 (10th Cir. 1996). The party entitled to fees must provide the district court with sufficient information to evaluate prevailing market rates. See Lippoldt v. Cole, 468 F.3d at 1225. Moreover, the party must also demonstrate that the rates are similar to rates for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community and for similar work. Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). See Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1255-56 (10th Cir. 1998);

Ramos v. Lamm, 713 F.2d at 555 ("The hourly rate should be based on the lawyers' skill and experience in civil rights or analogous litigation."), overruled in part on other grounds, Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 483 U.S. 711, 725 (1987). Courts may also consider their own knowledge of market rates. See Lippoldt v. Cole, 468 F.3d at 1225. The party seeking fees "should submit evidence supporting the hours worked and rates claimed." Hensley v. Eckerhart, 461 U.S. at 434. Although "[t]here is no precise rule or formula," district courts have discretion to make an "equitable judgment" as to "eliminate" or "reduce" requested fees "to reflect a plaintiff's overall success level." Hensley v. Eckerhart, 461 U.S. at 436-37. See General Protecht Grp., Inc. v. Leviton Manufacturing Co., 122 F. Supp. 3d 1114, 1135 (D.N.M. 2015)(Browning, J.)("A district court may also make adjustments to the lodestar figure to reflect a plaintiff's overall success level."); Ysasi v. Brown, 2015 WL 403930, at *10 (D.N.M. Jan. 7, 2015)(Browning, J.). The court may adjust the lodestar figure to reflect various factors, including the degree of success obtained, the significance of the legal issues involved, and the public interest advanced by the litigation. See Farrar v. Hobby, 506 U.S. 503, 120-22 (1992). The Court has discretion "to adjust or even deny a contractual award of fees if such an award would be inequitable or unreasonable." United States ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc., 790 F. Supp. at 251-52 (citing United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc., 834 F.2d at 1548). In awarding fees, the district court should "provide a concise but clear explanation of its reasons for [a] fee award." Hensley v. Eckerhart, 461 U.S. at 438.

## ANALYSIS

The Court first concludes that the CBA does not change the Court's standard of review under the Steelworkers Trilogy, because the CBA's arbitration provisions restate the traditional

standard of review's principles. Second, the Court concludes that Hill did not exceed his authority, because his Award draws from the CBA's essence and reflects a reasonable interpretation of its terms. Third, the Court concludes that the Award does not violate public policy by reinstating Argenbright, because there is no evidence that Argenbright violated St. Vincent's HIPAA rules. Finally, the Court will not award fees or costs, because St. Vincent does not pursue frivolous arguments or act in bad faith. Accordingly, the Court denies St. Vincent's Petition, and grants in part and denies in part the Hospital Union's Motion. The Court orders St. Vincent to comply with the Award.[5]

I.   **THE CBA DOES NOT CHANGE THE COURT'S STANDARD OF REVIEW UNDER THE <u>STEELWORKERS</u> TRILOGY, BECAUSE THE CBA <u>REINFORCES THE TRADITIONAL STANDARD.</u>**

St. Vincent argues that the Court should apply the CBA's standard of review such that an arbitrator's award "may be set aside" if the arbitrator exceeds his or her authority or jurisdiction. <u>See</u> Letter at 8 (citing CBA, § 30.19.7, at 20). St. Vincent insists that applying the CBA's § 30.19.7 would not contravene the <u>Steelworkers</u> Trilogy's standard, because, under the <u>Steelworkers</u> Trilogy, "the contract is primary," and Hill "exceeded his authority" by acting contrary to the "express language of the CBA." Letter at 8. Although St. Vincent does not say it, the Court surmises that St. Vincent hopes the Court will not apply the deferential principles

---

[5]In its Response, St. Vincent "asserts that the Union has failed to state a claim upon which relief can be granted." Response ¶ 1, at 2. St. Vincent does not offer any further argument on this point. The Court is satisfied that the Hospital Union, in its Motion, states a claim upon which the Court can grant relief, for all the reasons that it grants in part the Motion. <u>See</u> <u>infra</u> at §§ I-IV. Moreover, the Court has subject-matter jurisdiction over motions brought under 29 U.S.C. § 185(a) to enforce arbitration awards. <u>See</u> <u>Cisneros v. ABC Rail Corp.</u>, 217 F.3d 1299, 1302 (10th Cir. 2000)(concluding that it has federal-question jurisdiction over an action brought under 29 U.S.C. § 185); <u>Milk Drivers, Dairy & Ice Cream Employees, Laundry & Dry Cleaning Drivers, Clerical & Allied Workers, Local Union No. 387 v. Roberts Dairy</u>, 294 F. Supp. 2d 1050, 1056 (S.D. Iowa 2003)("Federal courts have the power to specifically enforce collective bargaining agreements and any awards made through arbitration proceedings that are conducted pursuant to collective bargaining agreements." (citing <u>United Steelworkers of America v. Enterprise Wheel & Car Corp.</u>, 363 U.S. 593 (1960))).

that the <u>Steelworkers</u> Trilogy and its progeny articulate, such as the principle that that a court should uphold an award even if it is convinced that the arbitrator made serious judgment errors or mistakenly interpreted a CBA's provisions, <u>see</u> <u>LB & B Assoc., Inc. v. Int'l Bhd of Elec. Workers, Local No. 113</u>, 461 F.3d at 1197, so long as the court believes the award "draw[s] . . . its essence" from the CBA, <u>Litvak Packing Co. v. United Food and Commercial Workers, Local No. 7</u>, 886 F.2d at 276.

The Court concludes that the <u>Steelworkers</u> Trilogy applies in this case as it usually does, because the CBA's provisions, including § 30.19.7, do not alter that standard. The Tenth Circuit has called the court's standard of review for arbitration awards the "Mount Everest of standards[,] reflect[ing] the strong federal policy favoring arbitration agreements." <u>Terex Corp. v. Local Lodge 790 Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO</u>, 1996 WL 582744 at * 3. <u>See</u> <u>LB & B Assoc., Inc. v. Int'l Bhd of Elec. Workers, Local No. 113</u>, 461 F.3d at 1197 (stating that the "standard of review of an arbitrator's award is among the narrowest known to the law"). Given the public policy favoring arbitration agreements, the Court would need CBA language that clearly and forcefully demonstrates an intent to deviate from the usual standard of review before the Court could comfortably consider employing a new standard. Section 30.19.7 states:

The arbitrator's award may be set aside when the arbitrator:

> 30.19.7.1    Exceeded his/her authority in making the award.
>
> 30.19.7.2    Exceeded his/her jurisdiction under the terms of this Agreement, or,
>
> 30.19.7.3.    The award is contrary to law.

CBA § 30.19.7, at 20. These provisions fall short of changing the Court's standard of review in this case, because they express basic legal principles underlying the traditional standard of

review. Courts following the Steelworkers Trilogy and its progeny already consider as a matter of course whether an arbitrator has exceeded his or her authority. See, e.g., United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. at 598 ("A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award."); United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. at 38 ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."); Champion Boxed Beef Co. v. Local No. 7 United Food & Commercial Workers Int'l Union, 24 F.3d 86, 87 (10th Cir. 1994) ("The arbitrator's findings are beyond review, and, so long as the arbitrator does not ignore the plain language of the collective bargaining agreement, so is his interpretation of the contract."); United Food & Commercial Workers, Local Union No. 7R v. Safeway Stores, Inc., 889 F.2d 940, 946 (10th Cir. 1989)("We next consider whether the arbitrator exceeded his authority."). Under the Steelworkers Trilogy, the Court considers whether Hill exceeded his authority or his jurisdiction by inquiring whether he undertook any actions that "contravene[d] the express language of the labor contract" such that his judgment violated the CBA's essence. Mistletoe, 566 F.2d at 695 (determining that the arbitrator violated the CBA's essence by rewriting a CBA provision). Given that § 30.19.7 echoes the Steelworkers Trilogy's general principles, the Court cannot soundly interpret that provision as establishing a clear deviation from the accepted standard of review. Cf. N. New England Tel. Operations LLC v. Local 2327, Int'l Bhd. of Elec. Workers, AFL-CIO, 735 F.3d 15, 21 (1st Cir. 2013)(concluding that a CBA clause stating that the arbitrator may not "add to, subtract from, modify or disregard any of the provisions of this agreement" is a "generic no-modification provision [that] evidences no intent to circumscribe the

arbitrator's authority beyond our accepted standard"); <u>Kraft Foods, Inc. v. Office & Prof'l Employees Int'l Union, AFL-CIO, CLC, Local 1295</u>, 203 F.3d 98, 101 (1st Cir. 2000)(stating that a CBA clause prohibiting an arbitrator from modifying the agreement "incorporates general legal principles concerning an arbitrator's authority, 'reinforc[ing] the admonition . . . that legitimate arbitral awards draw their essence from the contract'" (quoting <u>LaRocque v. R.W.F.</u>, 8 F.3d 95, 97-98 (1st Cir. 1993))).

Section 30.19.5 also does not change the Court's standard of review under the <u>Steelworker</u> Trilogy. That CBA section states:

> The Arbitrator shall have the authority to determine if there was just cause for any disciplinary action. However, in no case shall the Arbitrator have the power to add to, nor subtract from, or modify this Agreement, nor shall the Arbitrator substitute their [sic] discretion for that of the employer where such discretion has been retained by employer, nor shall the Arbitrator exercise any responsibility or function of the employer, including, but not limited to, the ability to set standards of patient care.

CBA § 30.19.5, at 20. Like § 30.19.7, this section does little more than restate the <u>Steelworkers</u> Trilogy's basic principle that an arbitration award must draw its essence from the CBA, <u>i.e.</u>, that it is not "contrary to the express language of the contract or is so unfounded in reason and fact, so unconnected with the working and purpose of the agreement as to manifest an infidelity to the obligation of the arbitrator . . . ." <u>United Steelworkers of Am. v. Enter. Wheel & Car Corp.</u>, 363 U.S. at 597. <u>See</u> <u>Litvak Packing Co. v. United Food and Commercial Workers, Local No. 7</u>, 886 F.2d at 276 ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision. . . ."); <u>Mistletoe</u>, 566 F.2d at 695 (stating that an arbitrator

may not "substitute[] his views . . . for the provisions of the contract" nor "rewrite the labor contract").[6]

St. Vincent argues that the <u>Steelworkers</u> Trilogy's emphasis on an arbitrator's fidelity to CBA's express terms means that the Court must follow the CBA's purported standard of review that § 30.19.7 sets forth. <u>See</u> Letter at 7-8 (citing <u>Poland Spring Corp. v. United Food & Commercial Workers Int'l Union, AFL-CIO-CLC, Local</u> 1445, 314 F.3d 29, 35 (1st Cir. 2002); <u>Appalachian Reg'l Healthcare, Inc. v. United Steelworkers of Am., AFL-CIO-CLC, Local 14398</u>, 245 F.3d 601, 605 (6th Cir. 2001); <u>Champion Int'l Corp. v. United Paperworks Int'l Union</u>, AFL-CIO, 168 F.3d 725, 731 (4th Cir. 1999); <u>Georgia-Pac. Corp. v. Local 27, United Paperworkers Int'l Union</u>, 864 F.2d 940, 946 (1st Cir. 1988)). The cases to which St. Vincent cites, however, emphasize the basic principle that an arbitrator may not ignore a CBA's express language; none hold or suggest that a court must apply a CBA's standard of review in place of the <u>Steelworkers</u> Trilogy standard. <u>See</u> <u>Appalachian Reg'l Healthcare, Inc. v. United Steelworkers of Am., AFL-CIO-CLC, Local 14398</u>, 245 F.3d at 605 ("The arbitrator's decision conflicts with express provisions in the Agreement and imposes requirements on ARH which do

---

[6]The Court thus agrees with the United States Court of Appeals for the First Circuit, which also considered whether a CBA clause prohibiting an arbitrator from modifying the CBA changes the court's standard of review:

> This standard "no-modification" clause incorporates general legal principles concerning an arbitrator's authority, "reinforcing the admonition in [<u>United Paperworkers Int'l Union, AFL-CIO v. Misco Inc.</u>,] that legitimate arbitral awards draw their essence from the contract." <u>LaRocque v. R.W.F., Inc.</u>, 8 F.3d 95, 97-98 (1st Cir. 1993)(internal citations and quotation marks omitted). Thus the clause reminds arbitrators that their duty is to interpret and apply the agreement as negotiated, and that they may not reform the contract to do "industrial justice." [<u>United Paperworkers Int'l Union, AFL-CIO v. Misco Inc.</u>,] 484 U.S. at 30.

<u>Kraft Foods, Inc. v. Office & Prof'l Emples. Int'l Union, Local 1295</u>, 203 F.3d at 101.

not flow from the Agreement itself. The Agreement explicitly reserves to management the power to direct the work force and fix the number of hours of work to the management."); <u>Champion Int'l Corp. v. United Paperworks Int'l Union, AFL-CIO</u>, 168 F.3d at 731 ("The arbitrator had no contractual authority from Policy 683 to make his award, and thus the award could not be justified by that Policy."); <u>Poland Spring Corp. v. United Food & Commercial Workers Int'l Union, AFL-CIO-CLC, Local 1445</u>, 314 F.3d at 35 ("[W]e find that the arbitrator determined that Beaupre was guilty of insubordination, his decision to fashion a separate remedy due to mitigating circumstances impermissibly substituted his own notions of industrial justice over those established by the contract."); <u>Georgia-Pac. Corp. v. Local 27, United Paperworkers Int'l Union</u>, 864 F.2d at 946 ("To allow the arbitrator to ignore the [CBA's] explicit language . . . by substituting 'his own brand of industrial justice' for that agreed to by the parties would . . . do violence to . . . the Agreement, which prohibits the arbitrator from modifying, changing or adding to the provisions of the contract . . ." (quoting <u>United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.</u>, 484 U.S. at 36)). St. Vincent has not offered, and the Court cannot locate, binding or persuasive authority suggesting that the CBA changes the Court's legal standard of review under the <u>Steelworkers</u> Trilogy.

## II.     THE AWARD DRAWS ITS ESSENCE FROM THE CBA, BECAUSE HILL'S DECISION REFLECTS A REASONABLE INTERPRETATION OF ITS TERMS.

The Award draws its essence from the CBA. Hill does not rewrite or ignore the CBA's progressive disciplinary process when he reduces Argenbright's punishment from termination to suspension, because his decision reflects a plausible interpretation of the CBA's terms. Further, Hill does not exceed his authority by finding no grounds for terminating Argenbright for violating St. Vincent's HIPAA rules, because that decision reflect a reasonable interpretation of the CBA, and the Court may not vacate an arbitration award for an arbitrator's mistakes.

## A.  HILL DOES NOT REWRITE OR IGNORE THE CBA'S PROGRESSIVE DISCIPLINARY PROCESS.

Hill does not rewrite or ignore the CBA when he orders Argenbright's reinstatement and suspension, because his remedy reflects a plausible interpretation of the CBA's progressive disciplinary policy.  St. Vincent argues that, "[w]hen an arbitrator finds that an employee has violated an employer's rule that could lead to termination, *and the employer has retained management rights regarding discipline*, the arbitrator does not have the authority to circumscribe the employer's rights by fashioning a lesser remedy."  Motion Response at 4 (emphasis in original)(citing <u>Northern States</u>, 711 F.3d at 902-03; <u>Horton</u>, 506 F. App'x at 256-57; <u>187 Concourse Assoc. v. Fishman</u>, 339 F.3d 524, 526-27 (2nd Cir. 2005)).  According to St. Vincent, Hill implicitly determined that there was just cause for Argenbright's termination, because he determined that Argenbright violated her Final Warning.  <u>See</u> Motion Response at 4-5.  Consequently, St. Vincent maintains, Hill exceeded his authority, because he was only allowed to fashion an alternative remedy if there was no just cause.  <u>See</u> Motion Response at 5. Additionally, St. Vincent argues that Hill exceeded his authority by effectively rewriting the CBA's progressive disciplinary process when he ordered that Argenbright be reinstated, because the disciplinary policy requires that termination follows a Final Warning.  <u>See</u> Letter at 4.  These arguments are not availing.

To be sure, Hill determined that there was "clear and convincing evidence" that Argenbright entered a restricted area on January 11, 2016.[7]  Award at 36.  Hill appears to have

---

[7]The Hospital Union argues that Hill only found "clear and convincing" evidence that Argenbright attempted to access the restricted area with her badge.  <u>See</u> Reply at 3.  The Hospital Union's theory on this point is that the phrase "clear and convincing" must only apply to the one sentence in which it appears.  Hill wrote:

> The evidence is clear and convincing that she attempted to enter the area by using her badge which did not permit her to enter.  When that failed, she entered the

concluded that Argenbright's actions violated the Final Warning.  See Award at 36-37 (noting that a 2015 "Corrective Action which included a suspension and a final warning" instructed Argenbright not to enter the Surgical Services area without authorization).  It does not follow, however, that Hill concluded that St. Vincent had just cause for Argenbright's termination, because it is plausible to read the CBA as not requiring termination to follow a Final Warning. Before explaining why, it is worth revisiting the Court's standard of review: if there is a plausible argument that the arbitrator drew from the contract's essence, then the Court will not vacate the award, even if the arbitrator made a mistake applying the facts or interpreting the contract.  See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. at 36.  An arbitrator goes too far, however, when he or she ignores a contract provision's plain language and/or renders conclusions that are utterly unconnected with any reasonable contract interpretation.  See Mistletoe, 566 F.2d at 694.

Here, the Court can see a reasonable connection between the CBA and Hill's conclusions.  The CBA's § 12.12.10 states:

> The four (4) basic steps listed below will be followed for disciplinary action. These steps will generally be taken in the order listed, although some steps may be omitted when serious offences have been committed.
>
> (1)     Documented Verbal Counseling

---

area either by being let in a locked door by someone or following someone who gained entry by appropriate means.  She was witnessed in a patient bay area by the Director of Surgical Services.  She also texted a nurse in the department about seeing her for lunch in the break room.  She went back a second time, again without the permission of a supervisor because she thought she may have left her report sheet there before lunch.

Award at 36.  The far more sensible reading of that paragraph is that Hill concluded that there was clear and convincing evidence not just of Argenbright's attempted badge-based entry, but the other related actions too, particularly given that there was ample testimony -- including testimony from Argenbright herself -- supporting that paragraph's findings.

(2)    Written Warning

(3)    Final Warning or Suspension

(4)    Termination

CBA § 12.12.10, at 15.  St. Vincent contends that Hill rewrites this provision by ordering Argenbright suspended and reinstated because Hill repeats Step 3 instead of proceeding to Step 4, as the process requires.  Although the provision clearly states that its steps must be taken in order, it does not expressly prohibit steps from being repeated.  Moreover, the Final Warning and the Termination Form indicate that Termination does not necessarily follow a Final Warning. The Final Warning concludes by stating:  "**Consequences of further infractions:** Failure to immediately and continually adhere to the corrective measure described above <u>may result in further corrective action up to and including termination</u> for similar or any other hospital policy violation."  Final Warning at 3 (emphasis added).  Meanwhile, the Termination Form, which references Argenbright's Final Warning, <u>see</u> Termination Form at 4, explains that each of Argenbright's four infractions "taken separately . . . warrant[s] discipline, and taken together warrants termination." Termination Form at 1.[8]  With those statements in mind, it is plausible to read the progressive disciplinary process as being more flexible than St. Vincent now asserts that it is, such that an employee violating a Final Warning could remain in Step 3 to receive a suspension rather than necessarily proceeding to termination.[9]

_____

[8]St. Vincent terminated Argenbright for four infractions, <u>see</u> Termination Form 1-4, but Hill determined that three of them did not support termination, <u>see</u> Award at 33-36.

[9]In the Award, Hill does not explain his reasoning how the CBA empowers him to reduce Argenbright's punishment, but he need not make his reasoning so clear.  <u>See</u> <u>United Steelworkers of Am. v. Enter. Wheel & Car Corp.</u>, 363 U.S. at 598 ("Arbitrators have no obligation to the court to give their reasons for an award.  To require opinions free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions.").  To determine whether

In its Letter, St. Vincent addresses two reasons why it believes that Hill exceeds his authority.  See Letter at 2.  First, St. Vincent argues that, because the CBA provides that St. Vincent has the exclusive authority to make disciplinary decisions, and because Hill determines that Argenbright violated the Final Warning, Hill has no authority to change St. Vincent's decision to terminate Argenbright.  See Letter at 4-5.  St. Vincent argues that Mistletoe supports its position.  See Letter at 4.  In Mistletoe, an employer fired a "driver-salesman" for "failing to settle within 24 hours and accepting a personal check for a C.O.D. shipment."  Mistletoe, 566 F.2d at 694.  The Tenth Circuit observed that in a "proper case an arbitrator, in reliance on custom or usage in an industry, may construe a 'just cause' provision of a labor contract to include a progressive discipline requirement and may determine that certain conduct is 'just cause' for discipline but not for discharge."  Mistletoe, 566 F.2d at 695.  The Tenth Circuit determined in that case, however, that the CBA "explicitly says that failure to settle in 24 hours is just cause for discharge."  566 F.2d at 695.  Consequently, once the arbitrator found just cause for discipline based on the worker's failure to settle a check within 24 hours, the arbitrator could not reduce the punishment, because the CBA says that the worker's infraction is just cause for discharge.  See 566 F.2d at 695.  St. Vincent points to Amanda Bent Bolt Co. v. Int'l Union, United Auto., Aerospace, Agr. Implement Workers of Am., Local 1549, 451 F.2d 1277, 1278 (6th Cir. 1971)("Amanda Bent").  Letter at 4.  In Amanda Bent, an employer discharged twenty-eight employees for striking in violation of a CBA clause stating that striking employees would

an arbitration award draws its essence from the CBA, a court considers whether the arbitrator ignored the CBA's provisions and/or interpreted the CBA unreasonably.  See Mistletoe, 566 F.2d at 694.  An interpretation is not unreasonable just because it is incorrect.  See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. at 38 ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.").  The Court is satisfied that Hill's Award reflects a plausible interpretation of the CBA's progressive disciplinary process.

be subject to discharge. See 451 F.2d at 1278. The arbitrator determined that the discharged workers violated the CBA by going on strike, but ordered that they be reinstated with full seniority. See 451 F.2d at 1280. The United States Court of Appeals for the Sixth Circuit determined that the arbitrator exceeded his authority and that his award was contrary to the CBA's terms. See 451 F.2d at 1280. The Sixth Circuit noted that the CBA reserved the employer's exclusive right to hire, promote, demote, discharge, or discipline its employers. See 451 F.2d at 1279. The Sixth Circuit reasoned that, when the employees violated the CBA's no-strike clause, "they were subject to discharge," and "the determination of the penalty was reserved to the company and was not the prerogative of the arbitrator." 451 F.2d at 1280. Consequently, according to the Sixth Circuit, once the arbitrator determined that the workers violated the CBA's no-strike clause which provided the basis for their termination, the arbitrator was not permitted to infringe on the employer's exclusive power to make its disciplinary proceedings. See 451 F.2d at 1280.

This case is distinguishable from Mistletoe and Amanda Bent. In Mistletoe, the arbitrator determined that the employee did something that the CBA expressly states is cause for discharge. See 566 F.2d at 694. Here, the CBA does not expressly state that violating a Final Warning or entering a restricted area without authorization on multiple occasions is cause for discharge. To be sure, the CBA lists "Termination" and the step following "Final Warning or Suspension," but it is not clear that violating a Final Warning necessarily results in Termination. The Final Warning itself states that violating the Final Warning's instructions "may result in further corrective action up to and including termination for similar or any other hospital policy violation." Final Warning at 3 (emphasis added). The CBA in this case does not, therefore, bind Hill to uphold Argenbright's termination.

Amanda Bent is also distinguishable.  In that case, the Sixth Circuit indicates that, when the employer retains an exclusive right to discipline its employees, and the arbitrator confirms that the employee did the act for which the employer disciplined the employee, the arbitrator may not second-guess the employer's disciplinary decision.  See 451 F.2d at 1280.  At first glance, that principle appears to apply in this case, where the CBA gives St. Vincent the exclusive authority to make disciplinary decisions, see CBA § 1.1.12, at 8, and Hill appears to agree that Argenbright violated the Final Warning by entering the secured area without authorization, see Award at 36-37.

There is, however, an important difference between this case and Amanda Bent: St. Vincent did not terminate Argenbright for violating the Final Warning.  According to the Termination Form, St. Vincent terminated Argenbright for four infractions, including the Final Warning violation.  See Termination Form at 1 (stating that each infraction, "taken separately[,] . . . warrant[s] discipline, and taken together warrants termination").  Hill is not dealing with four punishments for four discrete violations; once he determines that "the bulk of the charges against the Grievant were unsubstantiated," Award at 37, there was no disciplinary decision for the one violation to which he could defer.  Hill therefore determines that there is no just cause for termination based on the four infractions; at that point he has no choice but to fashion his own remedy with regard to the Final Warning violation.  See Award at 3 ("The issue presented to the Arbitrator was whether the Grievant was discharged for just cause and if not, what is the remedy?").

Second, St. Vincent argues that Hill exceeds his authority by rewriting the CBA to "effectively creat[e] a second final warning not provided in the CBA."  Letter at 7.  St. Vincent compares Hill's Award to the arbitrator's decision in Bruno's, Inc. v. United Food &

Commercial Workers Int'l Union, Local 1657, 858 F.2d 1529, 1530 (11th Cir. 1988) (Johnson, C.J.)("Bruno's").   According to St. Vincent, Bruno's offers a good example of an arbitrator creating new CBA policies.  See Letter at 6.  In Bruno's, the arbitrator determined that a grocery chain's policy for disciplining grocers for not charging for items in the bottom compartment of customers' shopping carts is unfair and void.  See 858 F.2d at 1530-31.  The arbitrator "specifically outlined a new policy, which included less severe fines for first offenses and more direct management monitoring of bascart security shoppers" -- secret shoppers meant to test grocers -- "to assure prompt notification and verification of offences."  858 F.2d at 31. The Sixth Circuit determined that the arbitrator "may not create a new rule to replace the one he strikes down," because the CBA bestowed an exclusive right upon the employer to establish reasonable rules.  Bruno's, 858 F.2d at 1532.

St. Vincent argues that Hill, like the Bruno's arbitrator, rewrote the CBA by "effectively creating a second final warning" by reducing Argenbright's punishment from termination to suspension.  Letter at 7.  This case is distinguishable from Bruno's in several ways.  First, Hill does not purport to create a new CBA rule for St. Vincent's and the Hospital Union's application beyond this case.  Second, suspending Argenbright does not create a second final warning step in contravention to the CBA's express terms, because Hill is readjusting Argenbright's punishment in light of his determination that there was no just cause for termination based on Argenbright's four alleged infractions, see Award at 37, and, as discussed above, the CBA does not plainly state that violating a final warning necessarily results in termination.  See supra at 34.  Hill's decision, therefore, is consistent with both his express direction, see Award at 3 ("The issue presented to the Arbitrator was whether the Grievant was discharged for just cause and if not, what the remedy?"), and Tenth Circuit precedent, see Mistletoe, 566 F.2d at 695 ("[In a]

proper case an arbitrator, in reliance on custom or usage in an industry, may construe a 'just cause' provision of a labor contract to include a progressive discipline requirement and may determine that certain conduct is 'just cause' for discipline but not for discharge."). Cf. Tobacco Workers International Union v. Lorillard Corp., 448 F.2d 949, 956 (4th Cir. 1971)("[A]lthough the agreement is silent as to remedies, the fashioning of an appropriate remedy is not an addition to the obligations imposed by the contract.").

**B.    HILL DOES NOT EXCEED HIS AUTHORITY BY FINDING NO GROUNDS FOR TERMINATING ARGENBRIGHT FOR VIOLATING ST. VINCENT'S HIPAA RULES.**

St. Vincent argues that Hill exceeds his authority by finding no grounds for termination for violating HIPAA-related rules. See Petition at 20. According to St. Vincent, Hill misconstrues Argenbright's disclosure duties under the CBA, and Hill should analyze whether there is sufficient evidence that Argenbright violated St. Vincent's HIPAA-related policies and not HIPAA itself. See Petition 21-23. St. Vincent may be correct that Hill misunderstood the CBA and the reasons for Argenbright's termination, but the Court must defer to an arbitrator's decision even when the arbitrator makes factual or legal errors. See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. at 38 ("[T]he parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.").

**III.    THE COURT WILL NOT VACATE THE AWARD FOR VIOLATING PUBLIC POLICY.**

St. Vincent argues that the Court should vacate the Award because it violates public policy. See Motion Response at 11. According to St. Vincent, "[a]llowing an employee to collect and misuse patient information, refuse to cooperate in an investigation of the matter, and avoid discipline flies in the face of well-established public policy involving the privacy of

protecting health information." Motion Response at 11. The public policy at stake is the patient's right to privacy. See Motion Response at 11 (citing 65 Fed. Reg. at 82463-64; Summary of the HIPAA Privacy Rule, HIPAA Compliance Assistance at 1 (dated May, 2003), available at https://www.hhs.gov/sites/default/files/privacysummary.pdf ("A major goal of [HIPAA's] Privacy Rule is to assure that individuals' health information is properly protected while allowing the flow of health information needed to provide and promote high quality health care and to protect the public's health and well being.")).

Courts can vacate an arbitration award for violating public policy in certain circumstances:

> For an arbitration award to violate public policy, "[t]he policy involved must be an 'explicit public policy' that is 'well defined and dominant,' and is . . . ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interest.'" Kennecott Utah Copper Corp. v. Becker, 195 F.3d 1201, 1205 (10th Cir.1999) (quoting W.R. Grace & Co. v. Int'l Union of Rubber Workers, 461 U.S. 757, 766 (1983) (second alteration in original)). The public policy rationale for refusing to enforce an arbitration award is "a limited exception" in which "we ask only whether the award itself (i.e., reinstatement), and not the underlying reasons for the award, violate[s] public policy." Id.

Air Methods Corp. v. OPEIU, 737 F.3d 660, 669 (10th Cir. 2013).

The Court agrees that protecting patients' privacy is a well-defined and explicit public policy. See 65 FR 82462 ("Congress has long recognized the need for protection of health information privacy generally, as well as the privacy implications of electronic data interchange and the increased ease of transmitting and sharing individually identifiable health information."). The Court cannot soundly say whether reinstating Argenbright without disciplining her for violating HIPAA or HIPAA-related policies would violate that public policy, because the Court does not know whether Argenbright mishandled confidential patient information. Hill determined that, although "testimony indicated reasons for suspicion that Ms. Argenbright might

have hospital documents in her possession, . . . no evidence was provided at the hearing of a HIPAA violation by Ms. Argenbright." Award at 36. The Termination Form states that Argenbright had "what appeared to be a hospital report sheet," but Argenbright said that the pages were "personal notes." Termination Form at 2. Given this uncertainty about Argenbright's actions, there is no sound basis for the Court to vacate an arbitration award for violating public policy.

## IV.     THE COURT WILL NOT AWARD ATTORNEYS' FEES OR COSTS.

The Hospital Union argues that St. Vincent acted in bad faith and pursued a frivolous claim, and that the Court should, pursuant to its equity powers, award the Hospital Union attorneys' fees and costs. See Petition Response at 21-22. Litigants in American courts generally pay their own attorneys' fees. See Christiansburg Garment Co. v. Equal Employment Opportunity Commission, 434 U.S. 412, 415 (1978). "Exceptions to the American Rule include: (i) statutory basis; (ii) enforceable contract; (iii) willful violation of court order; (iv) bad faith action; and (v) litigation creating common fund for the benefit of others." Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc., 188 F. Supp. 3d at 1142-43. The Tenth Circuit recognizes that its district courts may award attorneys' fees for a litigant's bad faith in actions to enforce or vacate an arbitration award. See United Steelworkers of Am., AFL-CIO-CLC v. Ideal Cement Co., Div. of Ideal Basic Indus., 762 F.2d 837, 843 (10th Cir. 1985)(concluding that the district court did not abuse its discretion in denying attorneys' fees in an action to enforce an arbitration decision, because "this was a highly unusual situation with little guiding precedent"); Fabricut Inc. v. Tulsa General Drivers, Warehousemen and Helpers, Local 523, 597 F.2d 227, 230 (10th Cir.1979)(noting that courts may award attorneys' fees in actions to enforce arbitration awards, but concluding that the district court did not abuse its discretion in denying the union's attorneys' fees request because the employer "had substantial grounds for contesting in good faith the

Arbitrator's award").

In this case, there is no statutory basis for the Court to award attorneys' fees. See Aguinaga v. United Food & Commercial Workers Int'l Union, 993 F.2d 1480, 1483 (10th Cir. 1993)(noting that "no statute authorizes fee shifting in § 301 cases").  There is no contractual basis to award attorneys' fees, nor has either party willfully violated a court or order, nor has this litigation created common fund for the benefit of others.  The only possible basis for awarding attorneys' fees is for bad faith in St. Vincent's attempt to vacate the arbitration award.

The Court will not award the Hospital Union attorneys' fees or costs, or impose sanctions,[10] on St. Vincent, because St. Vincent's arguments were not brought in bad faith.  The Hospital Union contends that St. Vincent refuses to comply with the Award "simply because the Employer does not agree with the Arbitrator's decision."  Petition Response at 23.  The Hospital Union adds that "there is no objectively reasonable basis upon which the Hospital can argue that the Arbitrator exceeded the scope of his authority or issued an award that did not arguably construe or apply the contract."  Petition Response at 23.  The Court disagrees.  St. Vincent bases most of its arguments on its general theory that the CBA's arbitration-related provisions changes the Court's standard of review and outlines prohibited actions that, St. Vincent alleges, Hill

---

[10]In its Petition Response, the Hospital Union also requests that the Court sanction St. Vincent pursuant to rule 11 of the Federal Rules of Civil Procedure.  See Petition Response at 22.  As St. Vincent notes, however, rule 11 sanction requests must be made in a separate motion. See Doc 14 (citing Fed. R. Civ. P. 11(c)(2)); Rivera v. DJO, LLC, No. CIV 11-1119, 2012 WL 2175751, at *6 (D.N.M. June 5, 2012)(Browning, J.)("The Plaintiffs have not filed a separate motion for sanctions. Instead, they included the request in their reply to another motion. That practice does not comply with rule 11(c)(2)."). Furthermore, there is no indication that the Hospital Union attempts to comply with rule 11(c)(2)'s safe-harbor provision.  See Fed R. Civ. P. 11(c)(2).  The Hospital Union has not met the procedural requirements for making a rule 11 sanctions motion, nor does it show that St. Vincent pursues a frivolous position.  See supra, § IV, at 42-43.  The Court will also deny any request for sanctions under rule 11.

violated.  The Court disagrees with St. Vincent, but its theory is plausible.  The Court determines that the CBA's provisions are too general to change the Court's standard of review, <u>see</u> <u>supra</u> § I, at 26-31, and that Hill's decisions are consistent with a plausible reading of the CBA, <u>see</u> <u>supra</u> § II.A, at 33-34.  These questions required some analysis to decide, and neither the Supreme Court nor the Tenth Circuit provides clear warnings that St. Vincent's claims would fail to carry the day.  St. Vincent pushed for an extension of the law to give courts more power to vacate arbitration awards, but that request is no so unreasonable as to constitute bad faith.  The law that the courts have drawn is not so clear that the Court should, in this case, award the Hospital Union fees.  The Court will thus deny any requests for fees, costs, or sanctions.

**IT IS ORDERED** that: (i) Defendant's Motion to Enforce Arbitration Award, filed April 27, 2017 (Doc. 9), is granted in part and denied in part; and (ii) Christus St. Vincent Regional Medical Center's Petition to Vacate Arbitration Award, filed April 13, 2017 (Doc. 1), is denied. The Court orders Christus St. Vincent Regional Medical Center to comply with the orders in the Arbitrator's Decision and Award (dated January 13, 2016), filed April 13, 2017 (Doc. 1-2).  The Court denies Defendant District 1199NM, National Union of Hospital and Healthcare Employees, AFSCME, AFL-CIO's requests for fees and costs.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Hari-Amrit Khalsa
Hinkle Shanor LLP
Albuquerque, New Mexico

--and--

Ellen S. Casey
Jaclyn M. McLean
Hinkle Shanor LLP
Santa Fe, New Mexico

--and--

Charles Birenbaum
Jamie Adams
Greenberg Traurig
San Francisco, California

*Attorneys for the Plaintiff*

James A. Montalbano
Stephen Curtice
Shane C. Youtz
Youtz & Valdez, PC
Albuquerque, New Mexico

*Attorneys for the Defendant*